EUGENE H. SCHAMBER *v.* JOSEPH T. BOYD, DE-
FENDANT, AND WILLIAMS MORTUARY, LIM-
ITED, AND BANK OF HAWAII, LIMITED, GAR-
NISHEES.

No. 2242.

ARGUED JULY 3, 1936.          DECIDED AUGUST 11, 1936.

COKE, C. J., BANKS, J., AND CIRCUIT JUDGE BUCK IN
PLACE OF PETERS, J., DISQUALIFIED.

OPINION OF THE COURT BY BANKS, J.

This is an action in assumpsit, the amount involved
being $5620. The court below filed a written decision
finding that the plaintiff was liable to the defendant in
the amount claimed, with interest, and entered judgment
accordingly. The defendant brings the case here on a
writ of error.

The only assignments of error which we deem it neces-
sary to consider are those which raise the question of
whether there is in the record any substantial evidence

amounting to more than a scintilla that supports the decision and judgment of the trial court.

Prior to the transactions between the plaintiff and the defendant out of which the instant controversy arose, one Henry H. Williams was the owner of an undertaking business in Honolulu. The plaintiff became desirous of purchasing this business and incorporating it under the name of "Williams Mortuary, Limited." It was agreed between him and Williams that the value of the business was $65,000. The plaintiff agreed to give Williams in payment $10,000 worth of the capital stock of the corporation to be formed, $25,000 in cash and his promissory note for $30,000.

The plaintiff, being without funds to make the cash payment, solicited financial assistance from the defendant. On April 12, 1930, the defendant and his wife, in response to this request, borrowed $30,000 from the Bank of Hawaii, giving their note therefor, which note was endorsed by the plaintiff. As security for the loan the defendant mortgaged certain of his real property. Simultaneously he had the plaintiff execute to him a promissory note in the same amount that had been borrowed from the bank. The money realized from the loan was presumably used to make the cash payment to Williams, which the plaintiff had agreed to make. In 1932 there was a balance of $16,400 due on plaintiff's note to Williams for $30,000. At that time Williams proposed to the plaintiff that if he would presently pay the sum of $15,000 he, Williams, would cancel this indebtedness. The plaintiff again appealed to the defendant for financial help. A second loan was obtained from the Bank of Hawaii and a promissory note for $15,000 was executed by the defendant and his wife and the plaintiff. To secure this loan the defendant mortgaged additional real property and the plaintiff pledged to the bank 2740 shares of his stock in Williams Mortuary, Limited. About July, 1933, the de-

fendant, desiring to obtain a release of his collateral, requested the plaintiff to get someone else to put up security on the two notes held by the bank.

A year later and after the plaintiff had failed to make arrangements for the release of the defendant's collateral, the latter made three proposals to the plaintiff. The last of these proposals was that the defendant would purchase at par all of the shares of stock held by the plaintiff in Williams Mortuary, Limited. This proposal was accepted by the plaintiff a short time after it was made. At the time of this transaction the plaintiff owned 2775 shares of the capital stock of the mortuary company, the total par value of which was $55,000.

It is conceded by the defendant that the acceptance by the plaintiff of the above proposal constituted a contract between the parties under which the defendant became obligated to purchase the entire 2775 shares of the stock of Williams Mortuary, Limited, at the agreed price.

It is contended however by the defendant that it is shown by the uncontradicted evidence that this contract was by mutual agreement subsequently modified and that under the contract as modified the defendant was obligated to purchase only 2369 shares of said stock, which obligation the defendant has fully performed. It is further contended by the defendant that the undisputed evidence shows that the remaining 406 shares of the stock of the mortuary company, which are the basis of the present action, were sold by the plaintiff to the mortuary company.

The evidence is without conflict that after the plaintiff's acceptance of the defendant's proposal and before anything by way of performance of the resulting contract was done, the defendant informed the plaintiff that he was unable to purchase 406 shares of the stock and that the plaintiff said this was not satisfactory to him and that he would not dispose of any of his stock unless he could dis-

pose of all of it. The defendant then asked the plaintiff if he would be willing to accept the note of the Williams Mortuary, Limited, for the stock and the plaintiff said he would be willing to do this provided he could get a down payment. The plaintiff, testifying on the subject of payment for this stock, said: "He [Boyd] said he was not able to give me a cash settlement, and asked if I would take stock in the mortuary for the balance [406 shares], at which I answered 'no,'—after losing control I did not have any more interest in the mortuary and did not want any stock at all, so he asked me if I would be willing to accept a note from the mortuary to me. I told him 'yes,' but I said I wanted a down payment and the note could be in installments." The defendant, testifying on this subject, said: "I suggested that he [Schamber] should hold that [406 shares] as an investment, or if he wanted to sell it to hold it to a later time, until he could find a buyer; that I was not financially able to buy it myself; I had no resources to draw on to do it. He then stated that if he could not dispose of his holdings as a whole and clear out everything he owned in the mortuary, that things might as well remain just as they were. After some further conversation I told him that I would endeavor to find out if the bank would issue a loan to the mortuary and if so would endeavor to have the directors agree to buy his stock with a certain cash payment and the balance on a note. * * * As far as I remember he agreed to the proposition, with this,—that he wanted as much cash as could possibly be acquired for a down payment."

Following this conversation an agreement was prepared by Samuel B. Kemp, an attorney at law, at the request of Schamber and Boyd and signed by them in the presence of Kemp. This agreement is as follows: "This agreement, made and entered into this the 5th day of August, A. D. 1934, by and between E. H. Schamber, of

Honolulu, T. H., and J. T. Boyd, of Honolulu aforesaid, witnesseth: Whereas, E. H. Schamber has sold to the said J. T. Boyd forty-seven thousand three hundred eighty dollars ($47,380.00) of the capital stock of Williams Mortuary, Limited and has sold to said Williams Mortuary, Limited, the remainder of the capital stock of said Williams Mortuary, Limited, owned by him; and, whereas, as a part of the agreement between the said E. H. Schamber and the said J. T. Boyd for the sale and purchase of said stock the said E. H. Schamber has agreed to restrict his activities as a mortician in the city of Honolulu for a period of five (5) years as hereinafter set forth; now, therefore, in consideration of the premises, the said E. H. Schamber hereby agrees with the said J. T. Boyd that for the period of five (5) years commencing August 5th, A. D. 1934, he will not engage in the business of a mortician under his own name within the city of Honolulu, Territory of Hawaii. This agreement upon the part of the said E. H. Schamber, however, shall not be construed as preventing him from working as a mortician for other persons or firms or from becoming part owner by the purchase of corporate stocks in other corporations engaging in the business of morticians or from owning and operating another business of mortician under a firm or trade name not containing the name of E. H. Schamber. In witness whereof, the parties hereto have hereunto set their hands in duplicate at Honolulu, T. H., the day and year first hereinabove written.

"[s]   E. H. Schamber
       ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
       E. H. Schamber

"Witness =
[s] S. B. Kemp

"[s]   J. T. Boyd
       ‾‾‾‾‾‾‾‾‾‾‾
       J. T. Boyd"

A few days after this agreement was signed the board of directors of the Williams Mortuary, Limited, adopted

the following resolution: "Be it resolved by the board of directors of Williams Mortuary, Limited, that the promissory note now held by Williams Mortuary, Limited, executed by E. H. Schamber in the principal sum of $16,-588.12 be cancelled and surrendered to him upon the execution and delivery to said corporation by J. T. Boyd of a promissory note for a like amount; and be it further resolved that the vice-president and treasurer of said corporation be and they are hereby authorized to execute and deliver to the said E. H. Schamber the promissory note of said corporation for the principal sum of $5,620.00, payable in monthly installments of $250.00 each, commencing January 5th, 1935, and to become finally due August 5th, 1936, with interest at the rate of seven percent (7%) from maturity, said promissory note to contain the usual provisions for maturity for failure to pay installments and to bear the costs of collection including a reasonable attorneys' fee if not paid when due, said promissory note to be executed and delivered upon the endorsement and delivery by the said E. H. Schamber of $8120.00 of the capital stock of said Williams Mortuary, Limited, now owned by him; and, be it further resolved that said corporation pay to the said E. H. Schamber the sum of $2500.00 in cash upon the endorsement and delivery of said shares of capital stock."

On or about the same day that this resolution was adopted the plaintiff transferred 406 shares of the stock of the mortuary company to the Williams Mortuary, Limited. The check of the Williams Mortuary, Limited, for $2500 payable to Schamber was accepted and cashed by him and the note of the mortuary company for $5620 also payable to him was accepted by him.

The only rational conclusion from the evidence, which is without dispute or contradiction, is that the original contract between the parties which bound the plaintiff to sell and the defendant to purchase at par all the stock

which the former held in Williams Mortuary, Limited, was by mutual consent modified, and that under the contract as modified the defendant was only obligated to purchase 2369 shares of the stock and that the plaintiff would dispose of the remaining 406 shares by selling them to Williams Mortuary, Limited, taking in payment $2500 in cash and the note of the mortuary company for the balance of the purchase price. This contract was fully performed and the necessary legal effect was to release the defendant from his original obligation to purchase all of the plaintiff's stock.

It is true that the plaintiff testified that he sold the 406 shares of the stock to Williams Mortuary, Limited, at the defendant's orders. It was nevertheless a voluntary act on his part. He was under no compulsion to obey the defendant's orders and was free to refuse to carry them out.

There is not a scintilla of evidence in the record to support the judgment appealed from. It is therefore reversed and the case is remanded for further proceedings not inconsistent with this opinion.

*C. A. Gregory* (*Smith, Wild, Beebe & Cades* on the brief) for plaintiff.

*L. Jenks* (*Anderson, Marx, Wrenn & Jenks* on the briefs) for defendant.